THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | CASE NO. 1:16CR81 |
| Plaintiff, | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| NELSON FIGUEROA | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant, Nelson Figueroa. Plaintiff United States of America timely responded to the motion. The Court conducted a motion hearing on May 25, 2017. Upon review of the relevant findings and applicable law, Defendant's motion is DENIED.

**I.     FACTS**

Defendant was one of the subjects of an investigation by the Postal Inspection Service focusing on: 1) suspected parcels of cocaine being mailed from Puerto Rico to Akron, and 2) suspected parcels containing proceeds from the sale of cocaine being mailed from Cleveland to Puerto Rico. Defendant was identified mailing packages from Cleveland to Puerto Rico via the Post Office at the Cleveland Airport. Various intercepted packages each contained approximately $30,000.

Postal Inspectors Bryon Green and Myrick Dennis approached Defendant on December 21, 2015 in an attempt to elicit his cooperation in the investigation and use Defendant's knowledge against additional targets in the investigation. Green and Dennis did not intend to question Defendant beyond requesting his cooperation. Green and Dennis knew via Defendant's probation officer, Mike Miller, that Defendant would be at the probation office on December 21.

1

Sometime that morning, Miller escorted Defendant and Defendant's young son into a conference room where Green and Dennis were waiting. The conference room was a long room with a table in the center, two open doors at both ends, and a glass window through which the hallway could be seen. Green and Dennis identified themselves, using their credentials, as Postal Inspectors, informed Defendant that they were investigating a case, and all three were seated.

Approximately a minute after Defendant entered the room, Green testified that he read Defendant his *Miranda* rights from a card issued by the Postal Inspection Service. Green further stated that his practice is to read the *Miranda* warnings to a suspect even when it is not necessary, such as this situation. Defendant said nothing prior to receiving his rights. While Dennis testified that Defendant nodded in response to receiving his rights, and Green testified that Defendant shrugged in response, both agree that Defendant did not verbally acknowledge them. Green testified that he told Defendant that he was not under arrest, that Defendant was there voluntarily, and that Defendant was free to leave at any time.

Green proceeded to lay out the case against Defendant, including showing photographs of Defendant mailing suspected parcels and of the cocaine that had been intercepted. Green and Dennis testified that in response to viewing the pictures, Defendant stated, "I never touched the cocaine. I only mailed the money. Everyone is doing this." Green and Dennis did not ask Defendant any questions. Green told Defendant to call him the next morning if Defendant was willing to cooperate, and Defendant stated he needed to think about it due to concerns of his family's safety. The meeting lasted approximately thirty minutes.

Defendant moves to suppress his statement on the grounds that he did not receive his *Miranda* warnings. For the following reasons, Defendant's motion is DENIED.

## II. ANALYSIS

The Fifth Amendment protects a criminal defendant from compelled self-incrimination. U.S. Const. amend. V. To protect this right, the Supreme Court has required that a criminal defendant be apprised of certain rights prior to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). However, the *Miranda* requirements only apply "when there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

> In drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider all of the circumstances surrounding the encounter, with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest. To answer this question, courts focus on the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.

*United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quotations and citations omitted).

Several factors are considered in determining whether an interrogation was custodial, including (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he did not need to answer the questions. *Id.*; *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

Consideration of the above factors reveals that Defendant was not subject to custodial interrogation, and thus the *Miranda* warnings were not required and were only administered out of caution. First, the location of the interview demonstrates that the interrogation was not custodial. Defendant was questioned in the conference room of his probation officer, a place he already had a reason to be. The two doors of the room were both open, and Defendant was told he was free to leave the room at any time.

3

Second, the meeting between Defendant and Green and Dennis lasted only approximately thirty minutes. A thirty minute meeting is not lengthy. Even meetings lasting approximately sixty minutes have been found not to be lengthy. *United States v. Luck*, No. 13-20303-SHM-dkv, 2014 U.S. Dist. LEXIS 73323, at *29 (W.D. Tenn. Jan. 27, 2014). In regard to manner of questioning, Defendant was not questioned. Green laid out the investigation, showed Defendant photographs, and Defendant made his statement in response to viewing the photographs. Defendant was told to call Green if he wished to cooperate, but no questions aimed at eliciting information were posed.

Third, Defendant's freedom of movement was not restrained. Defendant sat of his own volition, both doors to the room remained open, and Defendant was told that he was not under arrest, that he was only there voluntarily, and that he was free to leave at any time.

Fourth, no questions were posed to Defendant. Instead, Green laid out the case against Defendant, showed Defendant photographs, and told Defendant to call him the following day if he wished to cooperate. Further, Green told Defendant that he was there voluntarily and could leave at any time, implying that Defendant did not have to answer any questions if he did not wish. The above factors demonstrate that Defendant was not in custody, any statements made by Defendant were voluntary, and Defendant was not entitled to *Miranda* warnings. *United States v. Booker*, No. 92-5174, 1992 U.S. App. LEXIS 29028, at *12-13 (6th Cir. November 5, 1992).

### III. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

Date: June 14, 2017                 */s/ John R. Adams*
                                                 Judge John R. Adams
                                                 United States District Court